NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| C.T., | : | |
| | : | |
| Plaintiff, | : | Civil No. 20-03674 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff C.T.'s Appeal (Compl., ECF No. 1)

from the final decision of the Commissioner of Social Security denying Plaintiff's claim for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*

For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

## I.     PROCEDURAL HISTORY[1]

On October 17, 2012, Plaintiff filed a Title II application seeking Social Security

Disability and Insurance benefits, alleging an onset of disability beginning October 4, 2012. (R.

at 695, ECF No. 9-13). The claim was initially denied on March 15, 2013, (*id.*), and again upon

reconsideration on July 17, 2013. (R. at 138–40). Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ"). (*Id.*). On April 23, 2015, a video hearing was held before

ALJ Alan Berkowitz. (R. at 30–71). On June 22, 2015, ALJ Berkowitz affirmed the State

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

agency's redetermination dated July 17, 2013. (R. at 11–22). Plaintiff appealed ALJ Berkowitz's opinion to the Appeals Council on August 26, 2015. (R. at 9). The Appeals Council affirmed ALJ Berkowitz's decision on December 6, 2016. (R. at 1–5). On February 8, 2017, Plaintiff appealed the matter to this Court. (R. at 789, 793–94). A consent order to remand was entered into by the parties on August 17, 2017. (R. at 795–98). On July 6, 2018, Plaintiff testified before ALJ Lisa Hibner. (R. at 725–88). On August 20, 2018, ALJ Hibner issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 692–724). Plaintiff filed a request for Review with the Appeals Council, which was denied on January 31, 2020. (R. at 684–89). ALJ Hibner's August 2018 decision became the final decision of the Commissioner of Social Security. Plaintiff filed then this action for judicial review on April 6, 2020. (Compl., ECF No. 1).

## II.    LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that

lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

## B.  Review of the Commissioner's Decision

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See*, *e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir.1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

This Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not consider the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.     FACTUAL BACKGROUND

### A.  Plaintiff's History

In her complaint, Plaintiff contends that her disability dates to October 4, 2012. (Compl. ¶ 6). She was previously employed as a buyer for a flower shop and a part-time community aide. (R. at 263, 716–18). At the time of both hearings, Plaintiff lived at home with her boyfriend and two children. (R. at 39, 737–38). Plaintiff is able to drive short distances, dress herself, go grocery shopping with her son or boyfriend, lift and carry a gallon of milk, prepare simple meals, and perform some household chores (washing dishes, sweeping). (R. at 53–54, 241–43, 762–64). From 2015 through 2018, Plaintiff worked as a behavioral assistant mentor. (R. at 743–44). Plaintiff reported $13,864 in income in 2016. (R. at 918).

Plaintiff states that she is unable to engage in substantial gainful activity ("SGA") due to severe physical and mental impairments including degenerative disc disease, carpal tunnel

syndrome, obsessive compulsive disorder ("OCD"), generalized anxiety disorder, and major depressive disorder, along with their associated functional limitations. (Compl. ¶ 6).

### B.  Relevant Medical History

There are numerous medical opinions and treatment records in the administrative record. Only those relevant to the current appeal are discussed below.

#### i.  Physical Impairments

Plaintiff has carpal tunnel syndrome, lumbar degenerative disease, scoliosis, and sciatica. (R. at 46, 460, 466, 536, 674). She has complained of leg and lower back pain, which causes stiffness and difficulty with physical tasks such as sitting, bending, standing, lifting, and walking. (R. at 47, 50–52, 261, 755–58, 762). Plaintiff has been taking Flexeril (cyclobenzaprine) for her back pain since approximately 2010. (R. at 434, 938).

Plaintiff has a history of opioid addiction. (R. at 754). Plaintiff was hospitalized on December 11, 2014 for suicidal ideation, depression, and reports of visual and auditory hallucinations following a relapse on opiates and heroin. (R. at 566–608, 626). Plaintiff stated that she relapsed due to the narcotic pain medications prescribed to her after her November 2014 back surgery. (R. at 583, 626).

##### (1) Dr. Banger

In June 2013, Dr. Ronald Banger performed a consultative examination on Plaintiff. Plaintiff was diagnosed with a status postop lumbar diskectomy. (R. at 386). Dr. Banger noted that Plaintiff ambulated without difficulty, dressed and undressed without difficulty, and could heel and toe walk. (R. at 385–86).

##### (2) Dr. Santos-Miranda

In 2013, Plaintiff sought care from Dr. Chona Santos-Miranda. (R. at 509). Dr. Santos-Miranda acted as Plaintiff's primary care physician from 2013 through 2018. (R. at 1090–157). Plaintiff had an abnormal X-ray and was referred to pain management. (R. at 411). Dr. Santos-Miranda recommended on November 18, 2013 and October 31, 2014 that Plaintiff avoid lifting due to her back pain. (R. at 491, 508). Plaintiff often presented to Dr. Santos-Miranda with a full range of musculoskeletal movement. (R. at 1090–157). Plaintiff complained to Dr. Santos-Miranda about back pain on three occasions since 2014. (R. at 1115, 1121, 1126).

### (3) Dr. Khan-Jaffrey

In 2014, Plaintiff went to Dr. Kaniz Khan-Jaffery for pain management. (R. at 408, 411). Dr. Khan-Jaffery treated Plaintiff through November 2014. (R. at 469). Dr. Khan-Jaffery ordered an MRI of Plaintiff's lumbar spine in April 2014, which showed right convex scoliosis and three bulging discs. (R. at 413). In June 2014, Dr. Khan-Jaffery filled out a check box form indicating that Plaintiff should avoid lifting weights. (R. at 400). Plaintiff's back pain was noted to be aggravated by sitting, standing and walking for too long in a portion of Dr. Khan-Jaffery's treatment records entitled "History of Present Illness." (R. at 469, 472, 475, 478).

On April 30, 2014, Dr. Khan-Jaffery concluded that Plaintiff's EMG and nerve conduction study revealed carpel tunnel syndrome. (R. at 401). Dr. Khan-Jaffery recommended that the Plaintiff undergo occupational therapy. (*Id.*).

### (4) Dr. Bussey

Plaintiff received treatment from Dr. Jonathan Bussey, a neurosurgeon, from August 2014 to February 2015. (R. at 663–80). Physical examinations in August 2014 and February 2015 revealed Plaintiff could tandem walk, had normal muscle strength and range of movement in her extremities, and normal gait. (R. at 679–80, 666). An X-ray of Plaintiff's lumbar spine in

August 2014 showed disc narrowing and mild scoliosis "which may be secondary to spasm. (R. at 466). Dr. Bussey performed surgery—revision laminectomy at L5/S1 with posterior stabilization and fusion—in November 2014. (R. at 667, 670, 676).

### i. Mental Health Impairments

Plaintiff reports difficulty with understanding, memory, following instructions, paying attention, concentration, stress, and changes in routine. (R. at 243–45, 260–62). Plaintiff says she self-isolates because she believes others are judging her. (R. at 243, 245, 262).

Throughout the relevant period, Plaintiff sought care from her psychiatrist, Dr. Theresa Bell. Treatment records from 2013 report Plaintiff's concentration as fair, okay, and intact, (R. at 344, 351), but also found that the Plaintiff was fidgety, (R. at 351).  In her Medical Source Statement dated June 24, 2014, Dr. Bell diagnosed Plaintiff with Major Depressive Disorder, Obsessive Compulsive Disorder, Attention Deficit Hyperactivity Disorder, and Generalized Anxiety Disorder. (R. at 390). Dr. Bell opined that Plaintiff has extreme deficiencies of concentration and persistence of pace. (R. at 391, 392–394, 396). Dr. Bell asserted that Plaintiff would be off task roughly 25% of the time during a normal workday. (R. at 394). Dr. Bell also noted that Plaintiff had a limited but satisfactory ability to carry out very short and simple instructions and to make simple work related decisions. (R. at 392). Additionally, Dr. Bell assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50 with the highest GAF in the past year of 55. (R. at 395).

### C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") between 2012 and 2015, or in 2017 (R. at 698–99). Because Plaintiff reported $13,864.00 in self-employment income in 2016 when the SGA threshold was $13,560.00, the

ALJ found Plaintiff had engaged in SGA that year. (*Id.*). At step two, the ALJ found Plaintiff to

have the following severe impairments: lumbar degenerative disc disease, carpal tunnel

syndrome, obsessive compulsive disorder, generalized anxiety disorder, and major depressive

disorder. (R. at 699). At step three, the ALJ found that none of Plaintiff's impairments met or

medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix

1. (R. at 700). The ALJ concluded that Plaintiff's mental impairments did not satisfy the

"paragraph B" criteria because the impairments did not "cause at least two 'marked' limitations

or one 'extreme' limitation." (R. at 703). The ALJ noted that "the following residual functional

capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph

B' mental functional analysis." (*Id.*). The ALJ also held that Plaintiff did not meet the paragraph

C requirements. (*Id.*). The ALJ then constructed Plaintiff's RFC, finding the following:

> [T]he claimant has the residual function capacity to perform sedentary work . . .
> except that she could occasionally climb ramps or stairs, occasionally climb
> ladders, ropes, or scaffolds, occasionally bend, stoop, kneel, crouch and crawl.
> She could perform work related activities involving frequent overhead reach,
> fingering, handling and feeling. She is limited to work involving simple, routine
> tasks. Work in a low stress job, defined as having only occasional decision
> making and occasional changes in the work setting. Work with occasional
> judgment required on the job and only occasional interaction with the public,
> supervisors, and co-workers.

(R. at 703).

In formulating the RFC, the ALJ found that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms[.]" (R. at 705).

However, the ALJ asserted that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of Plaintiff's symptoms were "not entirely consistent" with the record. (*Id.*).

In constructing the RFC, the ALJ referred to several medical sources in the record. The

ALJ noted Plaintiff received a consultative examination from Dr. Banger in 2013 that indicated

Plaintiff ambulated without difficulty. (R. at 705). Plaintiff started pain management with Dr. Khan-Jaffery in early 2014 and continued her treatment through mid-November after Plaintiff's November 2014 surgery. (*Id.* at 712). The ALJ discussed Dr. Bussey's treatment of the Plaintiff, noting Dr. Bussey performed surgery on November 6, 2014. (R. at 707, 712). The ALJ recounted multiple treatment session between Plaintiff and her primary care physician, Dr. Santos-Miranda. (R. at 705–07, 712). Thereafter, the ALJ stated, Plaintiff "complained to her primary care physician about back pain on three occasions," was not referred for palliative care, and did not seek additional specialized treatment. (R. at 712). She discussed Plaintiff's testimony as to Plaintiff's functional limitations. (R. at 704). As to Plaintiff's carpal tunnel syndrome, the ALJ found no evidence that Plaintiff followed through with occupational therapy. (*Id.*). The ALJ concluded that Plaintiff "ha[d] not established that she is refractory to consistent treatment for her carpel tunnel syndrome." (*Id.*).

The ALJ assigned little weight to Dr. Khan-Jaffery's June 2, 2014 recommendation that Plaintiff avoid lifting weights. (R. at 715). Dr. Khan-Jaffery did not indicate the range of weight Plaintiff was to avoid, and the ALJ noted that Plaintiff testified to being able to lift a gallon of milk. (R. at 716). The ALJ similarly assigned little weight Dr. Santos-Miranda conclusion on November 18, 2013 that Plaintiff should avoid lifting. (*Id.*). The ALJ noted Dr. Santos-Miranda's lack of expertise and reliance on Plaintiff's subjective complaints. (*Id.*). She found that Dr. Santos-Miranda's opinion was inconsistent with the record, which indicated that Plaintiff "was not as limited as determined by Dr. Santos-Miranda." (*Id.*).

As to Plaintiff's mental impairments, the ALJ determined that Plaintiff treated with Dr. Bell consistently through 2013, on handful of occasions in 2014, twice in 2015, three times in 2016, and four times in 2017. (R. at 712–13). The ALJ concluded that Plaintiff "was

undertreated for much of the period at issue and only participated in counseling for a short period in 2012. She has not established that she would be refractory to a full complement of mental health treatment on a consistent, ongoing basis." (R. at 13). The ALJ recognized Dr. Bell's June 2014 conclusion that Plaintiff:

> "had a limited but satisfactory ability to remember work like procedures, understand, remember and carry out very short and simple instructions, make simple work related decisions, ask simply questions or request assistance, respond appropriately to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, adhere to basic standards of neatness and cleanliness, and to travel to unfamiliar places."

(R. at 714). The ALJ discounted Dr. Bell's conclusion that Plaintiff met the "paragraph C" criteria, finding Plaintiff's "ability to function" was inconsistent with the functional abilities of an individual who met the criteria. (R. at 715). Finally, the ALJ recognized Plaintiff's GAF scores of 50 and 55 but opined that the scores reflected snapshots of Plaintiff's functioning and not her longitudinal medical history. (R. at 716).

Given Plaintiff's RFC, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a buyer and community aide at step four. (R. at 716–17). Based on the vocational expert's testimony, however, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy, like document preparer, final assembler, and table worker. (R. at 717–18). As such, the ALJ found the Plaintiff was not disabled from October 4, 2012 through the date of the ALJ's decision on August 20, 2018. (R. at 717–18).

## IV.   DISCUSSION

Plaintiff raises five challenges on appeal. (Pl. Br. 1–2, ECF No. 13). Plaintiff contends: (1) the ALJ erred in failing to consider a closed period; (2) the ALJ erred in her evaluation of the opinion evidence of Dr. Bell and Dr. Santos-Miranda; (3) the ALJ erred by failing to consider Plaintiff's scoliosis at step two and the remaining steps of the sequential evaluation process; (4)

the ALJ erred in failing to consider Plaintiff's history of opioid dependence in regard to her limited treatment options; and (5) the ALJ failed to consider Plaintiff's inability to remain on task in the RFC assessment. (*Id.*) The Court begins with Plaintiff's first challenge.

## A.  The Closed Period

Despite the ALJ's step one determination that Plaintiff engaged in substantial gainful activity ("SGA") in 2016, the ALJ considered the entirety of Plaintiff's records in rendering her decision, including those during and after 2016. (R. at 707, 710, 713–14). Plaintiff argues that the ALJ erred by relying on evidence outside of the "closed period"—presumably 2012 through 2015—when deciding this case.[2] (Pl. Br. 12–13).

As an initial matter, however, there is no evidence that Plaintiff requested a closed period of disability at any point prior to the ALJ's 2018 decision. *See Ward v. Kijakazi*, No. CV 20-1315, 2021 WL 3037711, at *2 (W.D. Pa. July 19, 2021) (finding that "the ALJ did not err in failing to explicitly address a closed period of disability when that request was not made before the ALJ.") (citing *Maslowski v. Colvin*, No. 15-1833, 2016 WL 1259967, at *17–18 (D.N.J. Mar. 31, 2016)). While the ALJ has the discretion to award a claimant benefits for a closed period even if one is not requested, *see Palmer v. Astrue*, 284 F. App'x 873, 875 (3d Cir. 2008) (affirming an ALJ's decision to grant a claimant, who requested ongoing benefits, benefits only for a closed period that ended when the claimant became "completely stable without any

---

[2] Plaintiff also contends that the ALJ's failure to proffer to Plaintiff the Certified Earning Query ("Query") was an error because "[t]he determination as to when the Plaintiff returned to SGA was an issue that the Plaintiff had every right to expect being provided the opportunity to address prior to the decision, as the ALJ had indicated." (Pl. Br. 12). It is unclear how this failure constitutes a legal basis for remand. Whether Plaintiff surpassed the earnings threshold in certain years is a factual question, and Plaintiff does not explain how she would have addressed the issue had the Query been proffered. In addition, Plaintiff's income during the relevant period was self-reported, so Plaintiff did not require the Query to put her on notice that she may have exceeded the SGA earnings threshold. (R. 749; 914–16). And, as Defendant argues, the primary purpose of the Query was to determine whether Plaintiff had engaged in SGA upon her return to work in 2015, (R. at 742–47, 750–51)—an issue the ALJ resolved in Plaintiff's favor, (R. at 698); (Def. Br. 14–16, ECF No. 14); *see Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

symptoms whatsoever"), the ALJ in this case found that Plaintiff "has not been under a disability…from October 4, 2012, through the date of this decision[,]" which includes the alleged closed period. (R. at 718). In making this determination, the ALJ considered the entire record, (R. at 705–09), not just evidence from the "admitted period of improvement," (Pl. Br. 14).

Plaintiff's contention that the ALJ impermissibly relied on Plaintiff's return to work in 2016 to find medical improvement is unpersuasive.[3]  Plaintiff cites *Figueroa v. Comm'r of Soc. Sec.*, where the Court held that the ALJ should have considered the claimant's impairments as they presented during the closed period, "not as they manifested during previous years when Plaintiff was taking medication." No. CV 17-8239, 2018 WL 6918869, at *5 (D.N.J. Dec. 28, 2018). But the facts of *Figueroa* are distinguishable from those in the present case. First, the *Figueroa* claimant's counsel clarified that the claimant was requesting benefits for a closed period of disability prior to the ALJ's decision. *Id.* at *1. In the instant case, Plaintiff has continued to assert that she has been disabled "since October 4, 2012," including in her complaint to this Court. (Compl. ¶ 6). Second, the *Figueroa* Court's decision rested on the fact that the claimant's impairments manifested in a substantially different way during the closed period because the claimant was uninsured at that time, and therefore unable to afford treatment or medication. *Id.* at *5. Here, Plaintiff points to no similar significant or abrupt change in her symptoms that necessitates consideration of a closed period. What's more, courts considering closed period still find return to work to be "relevant" to the disability determination and "must be evaluated in the context of other evidence." *Jemison v. Saul*, No. CV 20-0733, 2020 WL 7258515, at *11 (E.D. Pa. Dec. 10, 2020) (citing *Lee v. Comm'r Soc. Sec.*, 248 F. App'x 458,

---

[3] Plaintiff cites to 20 C.F.R. § 404.1579(a), which relates to the process of determining when an individual's existing disability benefits continue or end. Because Plaintiff was found to be not disabled as of September 2, 2012, (R. 75–89), and has now applied for a new period of disability beginning October 4, 2012, (R. at 695), this regulation is not applicable.

461 (3d Cir. 2007)). For these reasons, the Court concludes that the ALJ did not err in her decision not to consider a closed period in this case.

### B. The Opinion Evidence

While a treating source's opinion is typically entitled to great weight, an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 172 (3d Cir. 2016) ("The weight due a medical opinion depends on a variety of factors, including the degree to which relevant evidence supports the opinion and whether it is consistent with the record as a whole." (citing 20 C.F.R. § 404.1527(c)(3)–(4))). Ultimately, "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Miller v. Comm'r of Soc. Sec.*, No. 20-3642, 2021 WL 3137439, at *2 (3d Cir. July 26, 2021) (quoting *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011)) (alterations in original). Here, Plaintiff challenges the ALJ's decision to assign little weight to the opinions of Dr. Bell and Dr. Santos-Miranda.

### i.    Dr. Bell

In a 2014 medical source statement, Dr. Bell assigned Plaintiff a current GAF score of 50 and a year high score of 55. (R. at 395). Plaintiff argues that the ALJ erred in weighing Dr. Bell's opinion by dismissing Plaintiff's GAF scores "outright" and offering "only lay opinion that there is no correlation between GAF scores and the paragraph B criteria." (Pl. Br. 15); (Pl. Reply Br.). The Court disagrees.

To determine whether a claimant satisfies paragraph B criteria, an ALJ must evaluate the severity of that person's mental functional limitations.[4] It is well established that a GAF score

---

[4] "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme and two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information;

has no direct correlation to the severity requirements under Social Security Administration

Rules. *See Hughes v. Comm'r Soc. Sec.*, 643 F. App'x 116, 119 n.2 (3d Cir. 2016) (noting the

agency's instruction that a "GAF score is never dispositive of impairment severity" (citing SSA

AM-13066 at 5 (July 13, 2013)); *Rivera v. Astrue*, 9 F. Supp. 3d 495, 504 (E.D. Pa. 2014) (citing

65 Fed. Reg. 50746, 50764-63 (Aug. 21, 2000)). Rather, "[a] GAF score is evidence that is to be

assessed like all other medical evidence in the record, and the weight of its impact on a

claimant's RFC depends on whether it is well supported and not inconsistent with other

evidence." *Black v. Comm'r of Soc. Sec.*, No. 1:19-CV-17237-NLH, 2020 WL 4727274, at *6

(D.N.J. Aug. 14, 2020); *Cruz v. Colvin*, No. CV 15-1639, 2016 WL 1091347, at *12 (D.N.J.

Mar. 21, 2016) ("[B]ecause the GAF score remains acceptable and reliable medical evidence, the

ALJ must consider and weigh the importance of the GAF score, and must specify the reasons, if

any, for discounting it.").

Here, the ALJ considered the GAF scores together with other relevant evidence in the

record and properly explained her reasons for discounting them. The ALJ readily acknowledged

Plaintiff's GAF scores of 50 and 55, which indicate serious and moderate symptoms

respectively. (R. at 716). The ALJ concluded that her step three findings regarding Plaintiff's

mental limitations—in which the ALJ discussed Plaintiff's treatment records, Dr. Bell's opinion

evidence, and Plaintiff's testimony about her symptoms and daily activities—more accurately

reflected Plaintiff's longitudinal medical history than the GAF scores. (R. at 701–03, 716). The

ALJ further explained that "the claimant's GAF scores reflect snapshots of the claimant's

functioning at the time they were assessed" and do not "measure the claimant's ability to do

unskilled work." (R. at 716). Consequently, the Court finds that the ALJ sufficiently

---

interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (R. at
701).

contemplated Plaintiff's GAF scores, and the reasons she discounted the scores are contained within the record. Therefore, the ALJ did not err in her evaluation of the GAF scores.

Plaintiff next argues that the ALJ also erred by assigning little weight to Dr. Bell's opinion that Plaintiff met the Category C criteria. (Pl. Br. 16). Contrary to Plaintiff's assertion, the ALJ did not assign little weight to this opinion simply because the Category C criteria have changed since Dr. Bell issued her opinion. (*Id.*) Rather, the ALJ concluded that Plaintiff did not meet the criteria after finding that Plaintiff "is capable of leaving her home, participating in a job consistently, she takes care of her children, manages some household chores, and participates in outside activities," which indicated a level of functioning that was "inconsistent with the functional abilities associated with an individual who meets the 'paragraph C' criteria." (R. at 715). Indeed, Plaintiff testified that she can drive short distances, dress herself, go grocery shopping with her son or boyfriend, lift a gallon of milk, prepare simple meals, and perform light household chores. (R. at 53–54, 241–43, 762–64). The ALJ was entitled to assign little weight to Dr. Bell's opinion that Plaintiff met the Category C criteria for this reason.

### ii.    Dr. Santos-Miranda

Plaintiff raises several challenges to the ALJ's decision to assign little weight to Dr. Santos-Miranda's November 2013 opinion that Plaintiff should avoid lifting.[5] (R. at 716.) Plaintiff first contends that a "blanket statement" that a medical opinion is inconsistent with the record is insufficient to allow meaningful judicial review. (Pl. Br. 18).

"[I]t is within the ALJ's statutory authority to decide whom to credit as long as those choices are explained and supported by substantial evidence." *Hopkins v. Comm'r Soc. Sec.*, 813

---

[5] The ALJ also referred to Dr. Santos-Miranda's assessment that Plaintiff lacks the capacity work. (R. at 716). This assessment does not explicitly appear in the record. Defendant asserts that such an assessment flows from Dr. Santos-Miranda's opinion that Plaintiff should avoid lifting, though the ALJ does not make this clear in her decision. (Def. Br. 22).

F. App'x 775, 779 (3d Cir. 2020) (citing *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993)). Here, the ALJ adequately explained her decision to assign little weight to Dr. Santos-Miranda's opinion. The ALJ concluded that: (1) the opinion was inconsistent with the record and "the totality of the medical evidence" showed Plaintiff is not so limited; (2) Dr. Santos-Miranda's "lack of expertise in vocational training and occupational health," and internal medicine specialty had "not provided a balanced review of [Plaintiff's] limitations"; (3) Dr. Santos-Miranda relied heavily on Plaintiff's subjective complaints "to guide the completion of his opinion"; and (4) opinions regarding ability to work are "reserved to the Commissioner" under 20 C.F.R § 404.1527. (R. at 716).

Substantial evidence supports the ALJ's determination that Dr. Santos-Miranda's opinion is inconsistent with the record and the totality of the evidence indicates Plaintiff is not as limited as Dr. Santos-Miranda's opinion would suggest. (R. at 715–16). Much of the ALJ's rationale for discounting Dr. Khan-Jaffery's assessment that Plaintiff should "avoid lifting weights"—which the ALJ addressed directly before analyzing Dr. Santos-Miranda's opinion—applies with equal force to Dr. Santos-Miranda's conclusion. (R. at 716). Dr. Santos-Miranda too "did not indicate a range of weight [Plaintiff] was to avoid." (R. at 716.) Sedentary work requires lifting "no more than" ten pounds, 20 C.F.R. § 404.1567(a), and Plaintiff testified that she is able to carry a gallon of milk. (R. at 716, 757); *see Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592 (RBK), 2018 WL 6178862, at *6 (D.N.J. Nov. 27, 2018) (concluding that an ALJ was permitted to assign little weight to a doctor's opinion in part because the opinion was inconsistent with the plaintiff's own testimony about her physical limitations).

Moreover, the ALJ considered reports from various treating physicians prior to Plaintiff's surgery in formulating the RFC that indicated Plaintiff ambulated without difficulty, had no

sensory loss, exhibited full muscle strength, and had a full range of motion in her extremities. (R. at 705–06). Further, Dr. Bussey, Plaintiff's surgeon, provided no lifting restriction before or after Plaintiff's 2014 back surgery. (R. at 716; 663–80). After surgery, Dr. Bussey reported that Plaintiff was "doing well overall" and could tandem walk, had a normal gait, and had full strength in her lower extremities. (R. at 712). Plaintiff complained of back pain to Dr. Santos-Miranda only three times following her surgery in 2014, and Dr. Santos-Miranda did not refer Plaintiff to palliative treatment on any of those occasions. (R. at 712).

Plaintiff next claims that dismissing a treating source's opinion because that source is not a vocational expert violates the principles of 20 C.F.R. § 404.1527. (Pl. Br. 18). The Court finds that this argument misconstrues the ALJ's reasoning. In fact, the ALJ opined it was "Dr. Santos-Miranda's lack of expertise in vocational training and occupational health *coupled with his specialty in internal medicine*" that resulted in an imbalanced view of Plaintiff's limitations. (R. at 716) (emphasis added). Specialization is a factor that an ALJ must consider when weighing a treating source's evidence, 20 C.F.R. § 404.1527(c)(5), and the ALJ is entitled to consider "[o]ther factors … which tend to support or contradict the medical opinion" as well, 20 C.F.R. § 404.1527(c)(6). Dr. Santos-Miranda's training, specialty, and professional experience is undoubtedly relevant to his ability to assess functional limitations that may impact Plaintiff's ability to work. That the ALJ considered Dr. Santos-Miranda's lack vocational training expertise does not affront the principles of 20 C.F.R. § 404.1527.

Plaintiff then argues that it was improper for the ALJ to discount Dr. Santos-Miranda's opinion just because the doctor relied heavily on Plaintiff's subjective complaints. (Pl. Br. 18). Plaintiff points to SSR 16-3p, which she asserts does not allow the ALJ to evaluate a claimant's symptoms "based solely on objective medical evidence." (Id.). While SSR 16-3p does require the

ALJ to consider Plaintiff's subjective evidence, it also states that the agency will then "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p; *Neff v. Astrue*, 875 F. Supp. 2d 411, 420 (D. Del. 2012) ("For allegations of pain and other subjective complaints to be credited, they must be consistent with objective medical evidence.") (citing Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir.2000)).

Courts in this Circuit have recognized that a medical source's reliance on a patient's subjective evidence can be relevant factor for an ALJ to consider when assigning weight to the source's opinion. *See, e.g.*, *Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 172 (3d Cir. 2016) (finding that an ALJ could properly provide little weight to one physician's report in part because that doctor's "assessments substantially relied on [the plaintiff's] subjective self-reported symptoms and pain"); *Neff v. Astrue*, 875 F. Supp. 2d 411, 420 (D. Del. 2012). The ALJ in the instant case determined that the record did not "substantiate the severity of the pain and degree of functional limitations alleged by the claimant."[6] (R. at 711). That Dr. Santos-Miranda relied heavily on Plaintiff's subjective complaints is therefore pertinent to the ALJ's evaluation of his opinion.

Plaintiff also seemingly contends that, as a treating physician, Dr. Santos-Miranda's opinion was entitled to controlling weight. (Pl. Br. 18–19).  Plaintiff fails to point to specific evidence that supports her position that Dr. Santos-Miranda's opinion is "highly consistent" with the record. (*See* Pl. Br. 18–19). Because the Court finds that Dr. Santos-Miranda's opinion is inconsistent with other substantial evidence in the record, for the reasons discussed above, the ALJ was not obligated to give the opinion controlling weight. *See* 20 C.F.R. § 404.1527(c)(2);

---

[6] Plaintiff does not challenge the ALJ's weighing of Plaintiff's subjective evidence, so the Court will not address that issue.

*Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202–03 (3d Cir. 2008); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

The ALJ adequately explained her reasons for discounting the opinions of Dr. Bell and Dr. Santos-Miranda, and those determinations are supported by substantial evidence. Accordingly, the Court finds the ALJ did not err in her evaluation of the opinion evidence.

### C.  Plaintiff's Scoliosis

Plaintiff next asserts that the ALJ erred in failing to "mention Plaintiff's scoliosis or make a finding of severity" at step two. (Pl. Br. 18–20). Plaintiff correctly notes that SSR 96-8p requires an ALJ consider all of a claimant's impairments when developing the RFC, including those that are not severe. SSR 96-8p; (Pl. Br. 18–19); *see* 20 C.F.R. § 404.1545(a)(2). Though the ALJ erred in failing to consider Plaintiff's scoliosis at step two, the error is harmless.

An ALJ's error in evaluating the severity of a particular medically determinable impairment at step two is generally harmless if the ALJ recognizes at least one severe impairment and continues with the sequential evaluation. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). The ALJ must, however, account for the omitted impairment in formulating the RFC and the error must "not otherwise affect the outcome of the case." *Friday v. Comm'r of Soc. Sec.*, No. 1:20-CV-04504-NLH, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021) (citing *Torres v. Commissioner of Social Security*, 2018 WL 1251630, at *5 (D.N.J. 2018)) (citing *Richardson v. Commissioner of Social Security*, 2017 WL 6550482, at *5 (D.N.J. 2017)) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)). Here, the ALJ found several of Plaintiff's

impairments— her lumbar degenerative disc disease, carpal tunnel syndrome, OCD, generalized anxiety disorder, and major depressive disorder—met the requisite severity threshold. (R. at 699). It is not relevant that the previous ALJ found Plaintiff's scoliosis constituted a severe impairment in his 2015 decision. (R. at 815).

The question now becomes whether the ALJ sufficiently accounted for Plaintiff's scoliosis in the RFC. Plaintiff contends that the ALJ's failure to carry out a function-by-function evaluation of Plaintiff's impairments means the ALJ could not have properly considered Plaintiff's scoliosis in formulating the RFC, resulting in an "RFC that does not accurately reflect her level of impairment." (Pl. Br. 18–20). Specifically, Plaintiff alleges that the ALJ neglected to consider Plaintiff's limitations regarding "sitting, standing or walking too long"— all of which aggravate Plaintiff's pain. (*Id.*). Plaintiff also points to Dr. Santos-Miranda's 2013 and 2014 recommendations that Plaintiff avoid lifting due to pain. (Pl. Br. 20).

"A diagnosis of impairment, by itself, does not establish entitlement to benefits … a claimant must show that the impairment resulted in disabling limitations." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)). While SSR 96-8p requires an ALJ to carry out a function-by-function analysis, SSR 96-8p, this analysis need not be formulaic, *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("*Burne*t does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis."); *see Chiaradio v. Comm'r of Soc. Sec*., 425 F. App'x 158, 161 (3d Cir. 2011) (affirming an ALJ's RFC evaluation because "[a]lthough the ALJ did not make a task by task analysis, the overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do."); *Sheppard v. Comm'r of Soc. Sec.*, No. 1:19-CV-18206-NLH, 2020 WL 5652450, at *5 (D.N.J. Sept. 23, 2020). In the instant case, the

Court finds that the ALJ sufficiently accounted for Plaintiff's scoliosis in her RFC evaluation and Plaintiff fails to show how additional analysis of her physical limitations would change the RFC.

First, the ALJ mentioned Plaintiff's scoliosis explicitly in her RFC assessment, referring to Plaintiff's 2015 testimony that "she has scoliosis" and to an August 2014 x-ray of Plaintiff's lumbar spine evidencing "mild scoliosis, which may be secondary to spasm." (R. at 704, 706). It is hard to see why these references should be inadequate to demonstrate that the ALJ factored Plaintiff's scoliosis into the RFC, especially since the Court discerns only two other explicit references to scoliosis in the record. (R. at 460, 536); *see Johnson v. Comm'r of Soc. Sec*., 529 F.3d 198, 204 (3d Cir. 2008) (stating the Plaintiff had "cited no authority for the proposition that an ALJ must cite all evidence a claimant presents").

Second, nothing in the record ties Plaintiff's back-related symptoms or functional limitations to a specific diagnosis. Plaintiff identifies no scoliosis-specific symptoms nor any evidence demonstrating that her scoliosis caused a functional limitation above and beyond those the ALJ considered with respect to Plaintiff's back impairments generally. *See Moseley P. v. Kijakazi*, No. 2:19-CV-21348, 2021 WL 3910151, at *6 (D.N.J. Sept. 1, 2021) (finding the ALJ's omission of an impairment at step two to be harmless error since the claimant cited to "no medical evidence documenting how this condition impairs his functioning or results in greater or different restrictions than those found by the ALJ and which would lead to a different outcome.").

Third, the ALJ considered the functional limitations, including sitting, standing, lifting, and walking, of Plaintiff's multiple back impairments when constructing the RFC. The ALJ recounted at length Plaintiff's medical test results, medical opinion evidence from her treating physicians, Plaintiff's treatment history, daily activities, self-reported limitations, and subjective

complaints of pain throughout the decision. (R. at 704, 705–07, 712). The ALJ noted, for example, that the record shows only three occasions in which Plaintiff complained of back pain to her primary care provider after her surgery in November 2014, as well as the fact that Plaintiff has not been referred to palliative care for her back since that time. (R. at 712). The ALJ also stressed that Plaintiff sought no specialized treatment related to her back pain upon her return to part-time work, though incorrectly stated that Plaintiff "underwent treatment with no medications after 2015."[7] (R. at 712). Further, the ALJ credited Plaintiff's complaints of pain by including additional postural restrictions in the RFC "to consider [Plaintiff's] lumbar pain." (R. at 712).

Plaintiff highlights no evidence in the record that the ALJ ignored or omitted in her evaluation of Plaintiff's physical functional limitations. Rather, it seems that Plaintiff disagrees with the ALJ's conclusions. (Pl. Br. 18–20). But "[a] court may not weigh the evidence or substitute its own findings for the Commissioner's." *Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 174 (3d Cir. 2016) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986)). The record evidence Plaintiff cites to support her claim of sitting, standing, and walking limitations appears to be Dr. Khan-Jaffery's notations of Plaintiff's self-reported limitations in her treatment notes. (Pl. Br. 19); (R. at 469, 472, 475, 478). The ALJ referenced these same reports in the RFC analysis. (R. at 706). Likewise, the ALJ recognized Dr. Santos-Miranda's opinion that Plaintiff should "avoid lifting" but, for the reasons discussed above, she did not err in affording little weight to this opinion. (R. at 491; 508).

---

[7] Plaintiff's medical records show that she was prescribed Flexeril (or cyclobenzaprine) for muscle spasms throughout the relevant period. (R. at 434, 665–66, 938, 1091, 1095, 1101, 1106, 1116, 1122, 1128). This factual error is harmless, however, as the ALJ provided several other reasons for determining Plaintiff was capable of sedentary work with postural limitations. (R. at 712).

Because the ALJ sufficiently accounted for Plaintiff's scoliosis in the RFC determination and Plaintiff has not shown that additional consideration of the impairment would change the RFC outcome, the Court concludes that the ALJ's error at step two was harmless.

### D.  Plaintiff's History of Addiction

The Plaintiff contends that the ALJ's finding that Plaintiff has not "established that she is refractory to consistent treatment" is an error under SSR 16-3p and warrants remand. (Pl. Br. 20–22). SSR 16-3p states that the agency "will consider and address reasons for not pursuing treatment that are pertinent to an individual's case" when evaluating the credibility of an individual's statements about their symptoms and functional abilities. SSR 16-3p. Plaintiff argues the ALJ's "suggest[ion] that Plaintiff has failed to demonstrate that she would be unresponsive to treatment for both her mental and physical impairments" ignored Plaintiff's limited ability to pursue treatment with narcotic or potentially addictive health medications due to her history of opioid addiction. (Pl. Br. 22).

While the ALJ twice noted Plaintiff had not "established that she is refractory to consistent treatment," these statements pertained only to Plaintiff's carpel tunnel syndrome and mental health impairments. (R. at 712–13). As to Plaintiff's carpel tunnel syndrome, the ALJ noted that Plaintiff failed to pursue occupational therapy or receive *any* treatment since 2014. (R. at 712). Similarly, the ALJ concluded that Plaintiff "has not established she would be refractory to a full complement of mental health treatment" after highlighting that Plaintiff "only participated in counseling for a short period in 2012." (R. at 713). No evidence suggests that Plaintiff's history of addiction would limit her ability to engage in occupational therapy for her

hands and mental health counseling.[8] As such, the ALJ did not need to consider Plaintiff's limited ability to pursue treatment with medication. Remand is not warranted on this issue.

### E.  Off-Task Limitation

Under *Hess v. Comm'r Soc. Sec.*, "as long as the ALJ offers a valid explanation, a simple tasks limitation is permitted after a finding that a claimant has moderate difficulties in concentration, persistence, or pace." 931 F.3d 198, 211 (3d Cir. 2019) ("The relationship between 'simple tasks' limitations and 'concentration, persistence, or pace' is a close one. Indeed, such limitations directly encompass and anticipate a minimal level of ability in that functional area.") (internal quotation marks omitted). Here, Plaintiff alleges the ALJ failed to provide the requisite "valid explanation" and thus erred in omitting an off-task limitation in the RFC and hypothetical posed to the vocational expert. (Pl. Br. 24). The Court disagrees.

The ALJ provided little weight to Dr. Bell's opinion that Plaintiff had an extreme limitation in pace and concentration, which the ALJ considered to be inconsistent with Plaintiff's longitudinal medical history. (R. at 715). Plaintiff's mental health treatment schedule indicated "a patient[] whose symptoms were generally under control," the ALJ explained, as did the fact that Dr. Bell referred Plaintiff for "greater treatment" on only two occasions over the course of the relevant six year period. (*Id.*). Indeed, Dr. Bell treated Plaintiff less than ten times between 2015-2017. (*Id.*).

---

[8] Plaintiff cites to SSR 18-3p, which was not in effect at the time of the ALJ's decision, to support her proposition that risk of opioid addiction specifically may constitute a reason for not following prescribed course of treatment. (Pl. Br. 21). SSR 18-3p and its predecessor, SSR 82-59, apply only after a disability determination is made. *See* SSR 18-3p ("We only perform the failure to follow prescribed treatment analysis discussed in this SSR *after* we find that an individual is entitled to disability or eligible for statutory blindness benefits under titles II or XVI of the Act, regardless of whether the individual followed the prescribed treatment." (emphasis added)); *Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375 (3d Cir. 2009) ("It is also true that a denial of benefits for failure to follow a prescribed treatment plan may only be issued after the ALJ finds a disabling impairment that precludes engaging in any substantial activity[.]" (citing SSR 82-59)).

In her step three finding that Plaintiff had a moderate limitation in concentration and pace, the ALJ stressed Plaintiff "had responded to medication adjustments" for her attentional issues—while still recognizing Plaintiff "continued to experience distractibility issues"—and "exhibited no functional issues with pace or persistence." (R. at 702). In her RFC evaluation, the ALJ highlighted mental health treatment reports in which Plaintiff's concentration was reportedly fair or intact. (R. at 702; 708–10). She accorded "great weight" to Dr. Bell's assertion that Plaintiff had a "limited but satisfactory" capacity to carry out "very short and simple instructions" and "make simple work related decisions." (R. at 715). The ALJ also considered Dr. Bell's March 2016 report noting that Plaintiff's concentration had improved with an increased dosage of her medication (Strattera) and April 2017 report in which Plaintiff stated that "she was doing better on Strattera." (R. at 710). The Court finds this analysis constitutes a valid explanation under *Hess*. The ALJ therefore did not err in omitting an off-task limitation in the RFC and the hypothetical questions to the vocational expert.

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision denying Plaintiff's application for benefits. An Order follows.


Dated: 09/27/2021                                   /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge